UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAMIRO LEMUS, on behalf of himself and all others similarly situated,

                            Plaintiff,

    -against-

TODD PEZZEMENTI, SHAWN PEZZEMENTI, and NORTHERN TREE SERVICE,
                            Defendant.

No. 15-cv-5592 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Ramiro Lemus commenced this action against Todd Pezzementi ("Todd"), Shawn Pezzementi ("Shawn"),[1] and Northern Tree Service ("Northern") asserting claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Before the Court is Plaintiff's application for a default judgment against Defendants Todd and Northern (together, "Defendants"). (ECF No. 70.) Defendants oppose the application and seek to set aside their default. (ECF No. 71.) The Court has reviewed the parties' submissions and considered the arguments made by both parties at a show cause hearing held on April 26, 2018, at the United States Courthouse, 300 Quarropas St., White Plains, NY 10601. For the following reasons, Defendants' application to set aside their default is DENIED, and Plaintiff's application is GRANTED to the extent provided herein.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-10-20

---

[1] This action was discontinued as against Defendant Shawn on October 23, 2017. (ECF No. 67.)

## BACKGROUND[2]

Plaintiff was employed by Defendants as a tree cutter between September 2013 and July 21, 2014. (Compl. ¶¶ 18–19.) During the period of his employment, Plaintiff alleges that he worked over 40 hours per week, and often worked over 10 hours per day. (*Id.* ¶ 24.) Plaintiff further alleges that he worked five to six days a week and averaged between 50 and 55 hours of work per week. (*Id.* ¶ 25.) Plaintiff was paid a fixed salary of $1,500.00 per week, with $400.00 paid to him by check and $1,100.00 paid to him in cash. (*Id.* ¶ 26.) Plaintiff was not paid overtime when he worked over 40 hours in one week. (*Id.* ¶ 27.) According to Plaintiff, Defendants knowingly and willfully operated their business with a policy of (1) not paying overtime to their employees; (2) not providing a proper wage statement to their employees; and (3) not maintaining workers' compensation insurance coverage. (*Id.* ¶ 16.)

On July 21, 2014, Plaintiff cut his hand with a chainsaw while working for Defendants. (*Id.* ¶ 34.) Plaintiff was fired the same day, allegedly because his injury was going to reveal Defendants' "practice and policy of violating the law by not maintaining Workers' Compensation insurance coverage." (*Id.* ¶¶ 36–37.) Also on July 21, 2014, Defendant Todd assaulted Plaintiff, kicking and striking him until he was unconscious. (*Id.* ¶¶ 38, 55–60.) Defendants did not pay Plaintiff for his last week of work. (*Id.* ¶ 40.)

Plaintiff filed his Complaint on July 17, 2015. (ECF No. 1.) Plaintiff alleges that Defendants' actions violated the FLSA and the NYLL. He also states a claim sounding in assault and battery against Defendant Todd. Plaintiff seeks monetary damages, liquidated damages pursuant to 29 U.S.C. § 216 and the NYLL, statutory penalties, pre-judgment interest, a declaration that Defendants' practices violated the FLSA and NYLL, an injunction preventing

---

[2] The facts in this section are taken from Plaintiff's Complaint, (ECF No. 1), unless otherwise specified, and are deemed admitted as true due to Defendants' default.

Defendants from continuing to engage in those practices, and reasonable attorneys' fees.

Following Defendants' appearance and answer, the Court referred this case to Magistrate Judge Lisa M. Smith ("Judge Smith") pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). During the pendency of discovery, Plaintiff moved for an order striking Defendants' pleadings. On August 11, 2017, Judge Smith issued a Report and Recommendation ("R&R"), recommending that Plaintiff's motion be granted. (ECF No. 58.) On September 19, 2017, the Court adopted Judge Smith's R&R in its entirety and directed the Clerk of Court to enter defaults against Defendants Todd and Northern pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 63.) The instant applications ensued.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) confers upon a court the authority to enter a default judgment against a defendant which has failed to plead or otherwise defend a suit. When determining whether to grant a default judgment, a court is guided by the same factors which apply to a motion to set aside entry of a default. *See Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270, 2013 WL 1335997, at *4 (E.D.N.Y. Feb. 28, 2013) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–171 (2d Cir. 2001)). These factors are: (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Const. Corp*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted); *see United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *Caraveo v. Nielsen Media Research*, No. 01-CV-9609, 2003 WL 169766, at *1 (S.D.N.Y. Jan. 22, 2003). The determination of a motion for default judgment

3

is left to the sound discretion of the district court. *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (citing *Enron*, 10 F.3d at 95).

A defendant's default constitutes an admission of all well-pleaded factual allegations in the complaint. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). However, it remains the plaintiff's burden to demonstrate that the uncontroverted allegations set forth in the complaint establish the defendant's liability as a matter of law on each asserted cause of action. *See Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) ("A default ... only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."). In addition, the plaintiff must prove the amount of damages to which he or she is entitled. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.").

After the entry of either a default or a default judgment,[3] the defaulting party may seek to have the entry set aside. *See* Fed. R. Civ. P. 55(c) & 60(b). A court "may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). "[T]he standard for setting aside the entry of a

---

[3] "Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, pursuant to Rule 55(a), a plaintiff may request the Clerk of the Court "to enter a default against a party that has not appeared or defended." *Id.* Second, "[h]aving obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)." *Id.*

4

default pursuant to [Federal] Rule [of Civil Procedure] 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to [Federal] Rule [of Civil Procedure] 60(b)." *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). The considerations, however, are the same under both rules: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Id.* at 277 (citations omitted). When evaluating these factors, courts "must be constantly aware of the 'strong policies favoring the resolution of genuine disputes on their merits.'" *Randazzo v. Sowin*, No. 97-CV-0967(DC), 1998 WL 391161, at *2 (S.D.N.Y. July 13, 1998) (quoting *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983)). Defaults are generally disfavored, particularly when there are issues of fact, and the defaulting party should prevail when there is doubt about whether default should be granted. *Enron*, 10 F.3d at 96; *Meehan*, 652 F.2d at 277.

**DISCUSSION**

In its order adopting Judge Smith's R&R, the Court described Defendants' repeated failures to appear for deposition or respond to Plaintiff's discovery requests and court orders. *See Lemus v. Pezzementi*, No. 15-CV-5592, Docket No. 63; *see also Lemus v. Pezzementi*, No. 15-CV-5592, Docket No. 58, at 7 ("Thus, Defendants have failed to obey multiple Court orders to provide or permit discovery, making it impossible for discovery in this case to be completed, and have provided no excuse for their failure to comply.") The Court specifically noted that in an order dated April 27, 2017, Judge Smith directed Defendant Todd to appear for a deposition on a specified date, but that Defendant Todd failed to appear or proffer a reasonable excuse for not complying with the court's directive. *See Lemus v. Pezzementi*, No. 15-CV-5592, Docket No. 63, at 4. The Court continued, "Such conduct can only be described as a blatant disregard of

5

a lawfully issued order." *Id.* Based on the foregoing, the Court found no clear error on the face of Judge Smith's determination that the conduct of Defendants Todd and Northern warranted striking of their answer.

As described in Judge Smith's R&R, Defendants' non-compliance with the Court's orders was willful and repeated and has caused protracted delays in the resolution of this matter, which undoubtedly prejudices Plaintiff. Although Defendants' counsel now states that his own illness made him unable to oppose Plaintiff's motion to strike or to object to Judge Smith's R&R, (*see* ECF Nos. 73, 74), no explanation has been provided for the conduct warranting the motion and the R&R in the first place. Defendants' answer was stricken because of Defendants' conduct, which made the completion of discovery in this matter impossible, and not because of the failure of counsel to oppose Plaintiff's motion and Judge Smith's R&R. Accordingly, the Court discerns no new basis to set aside Defendants' default. For the reasons more fully explained in the Court's Order adopting Judge Smith's R&R, (ECF No. 63), and Judge Smith's R&R, (ECF No. 58), an entry of default against Defendants remains appropriate. Defendants are deemed to admit all factual allegations in the Complaint.

The Court must next address whether Plaintiff has adequately pled facts supporting a finding of liability as a matter of law under the FLSA and the NYLL,[4] and under New York state law for assault and battery.

---

[4] Judge Smith recommended, and this Court ordered, that any application for default judgment against Defendants on Plaintiff's FLSA and NYLL claims, as well as his claim for unpaid wages, be held in abeyance, since Plaintiff claimed that all Defendants, including Shawn, were jointly and severally liable as to those claims. Since Plaintiff has since discontinued this action against Shawn, the Court may decide Plaintiff's application for default judgment as to all of his claims.

*a. FLSA and NYLL Claims*

   *i. Applicability of the FLSA*

In order to make a *prima facie* showing of a violation of the overtime provisions of the FLSA, Plaintiff must adequately allege that he was a covered employee under the FLSA. The FLSA applies only to employees who are "(1) personally engaged in interstate commerce or in the production of goods for interstate commerce (so-called 'individual coverage'), or (2) [were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (so-called 'enterprise coverage')." *Shim v. Millennium Group,* No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009); *see also* 29 U.S.C. §§ 206(a), 207(a). Individual coverage does not apply here, since Plaintiff does not allege that he was personally "performing work involving or related to the movement of persons or things … between states." *Shim*, 2009 WL 211367, at *2. However, enterprise coverage does apply.

An entity is an enterprise for purposes of the FLSA where "the related activities performed (either through unified operation or common control) by any person or persons [are] for a common business purpose." 29 U.S.C. § 203(r). Under the statute, the enterprise must also have no less than $500,000 in annual gross volume of business done. 29 U.S.C. § 203(s)(1)(A). Plaintiff alleges that Defendant Northern is a New York state business providing tree care and removal services. (Compl. ¶ 5.) Plaintiff was employed by Northern between September 2013 and July 2014. (*Id.* ¶¶ 18–19.) Plaintiff further alleges that Northern had gross annual revenues in excess of $500,000, and at least five employees. (*Id.* ¶¶ 15, 44.) Thus, Plaintiff has adequately pled that Northern constituted an enterprise under the FLSA.

Plaintiff has also adequately alleged that Northern was engaged in interstate commerce. Although Plaintiff states that both of Northern's business locations are within the state of New

York, (*Id.* ¶ 5), even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (Sotomayor, J.) (collecting cases). Accordingly, "the test is met if Plaintiff[] merely handled supplies or equipment that originated out-of-state." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011). This liberal requirement means that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie*, 997 F. Supp. at 530 (quoting *Dunlop v. Industrial Am. Corp.*, 516 F.2d 498, 501–02 (5th Cir. 1975)) (quotation marks omitted). Other courts in this Circuit have found that where employees are alleged to have utilized items and tools that are likely to have moved in interstate commerce, it is proper to infer that a business was engaged in interstate commerce under the FLSA. *See, e.g.*, *Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603, 2019 WL 5694118, at *5 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, No. 17-CV-7603, 2019 WL 5693768 (E.D.N.Y. July 8, 2019) (finding that "it is reasonable to infer that Defendants engaged in interstate commerce by handling and otherwise working with cleaning supplies that have been moved from or produced in other states");
*Huerta v. Victoria Bakery*, No. 10-CV-4754, 2012 WL 1107655, at *1–*3 (E.D.N.Y. Mar. 30, 2012) (finding it was "inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York"); *Rodriguez*, 784 F. Supp. 2d at 121 ("The Court finds it logical to infer here that the cleaning supplies utilized by the Plaintiffs originated outside of New York. . . Consequently, the Court finds that Plaintiffs are covered by the FLSA."); *Shim*, 2009 WL 211367 at *3 (presuming that employees handled goods or materials moved in interstate commerce because "it is simply

8

inconceivable that none of the ... custodial ... supplies ... originated outside of New York"); *Archie*, 997 F. Supp. at 530 (concluding that bags, brooms, shovels, pails, scrapers, radios, books and flashlights used by sanitation workers "undoubtedly moved in interstate commerce to New York City"). Here, it is logical to infer that the chainsaw and other equipment used by Plaintiff in his employment as a tree cutter for Defendants, (*see* Compl. ¶¶ 18, 34), moved in interstate commerce to New York. The Court concludes that Plaintiff is covered by the FLSA.

Furthermore, Plaintiff's allegations are sufficient to establish that there was an employer-employee relationship between him and Defendants for the purposes of this application. In order to determine whether an individual defendant is an employer under the FLSA, courts must apply the Second Circuit's economic realities test, which considers whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). Plaintiff states that he was an employed by Defendants between September 2013 and July 21, 2014, as a tree cutter, in service of Defendant Northern's tree care and removal business. (Compl. ¶¶ 18–19.) Plaintiff further states that Defendant Todd was an owner of Northern, exercised control over the conditions of Plaintiff's employment and had the power to hire and fire Plaintiff, determine the rate and method of Plaintiff's pay, and otherwise affect the quality of Plaintiff's employment. (*Id.* ¶ 6.) Accepting these allegations as true, the Court concludes that both Todd and Northern were Plaintiff's employers under the FLSA. Consequently, each Defendant is jointly and severally liable under the FLSA for any damages award made in Plaintiff's favor. *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011)

(finding allegations that an individual defendant was an owner, partner or manager, coupled with his default, were sufficient to qualify him as a FLSA employer and to impose joint and several liability with corporate defendant for FLSA violations).

### ii. Applicability of the NYLL

To prevail on a claim under the NYLL, Plaintiffs must establish that their employment relationship with Defendants falls within the NYLL, whose protections apply to "any person employed for hire by an employer in any employment." N.Y. Lab. L. § 190. Under the NYLL, employers are not required to achieve a certain minimum in annual sales or business in order to be subject to the law, and may be held jointly and severally liable for violations. *See id.*; *Pineda*, 831 F. Supp. 2d at 685; *see also Fermin v. Las Delicias Peruana Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n. 21 (S.D.N.Y. 2011); *see also Fermin*, 93 F. Supp. 3d at 37; *Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *9 (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status). Because the parties had an employer-employee relationship under the FLSA, they also had an employer-employee relationship under the NYLL. Accordingly, Defendants are jointly and severally liable for any damages arising out of their violations of the NYLL.

### iii. Substantive FLSA and NYLL Claims

Plaintiff alleges violations of the FLSA's overtime provision, which states that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified

at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The NYLL likewise requires employers to pay one and one-half times the ordinary minimum wage for any time greater than 40 hours that they work in a given week. 12 N.Y.C.R.R. § 146-1.4. Plaintiff's Complaint alleges that "Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned overtime wages." (Compl. ¶ 9.) Specifically, Plaintiff states that during the period of his employment between September 2013 and July 21, 2014, Plaintiff worked five to six days per week and averaged between 50 and 55 hours per week. (*Id.* ¶ 25.) Plaintiff received a fixed salary of $1,500.00 per week, with $400.00 paid by check, and $1,100.00 paid in cash. (*Id.* ¶ 26.) However, "Plaintiff was not paid overtime for any hours worked past 40 in a work week." (*Id.* ¶ 27.) Plaintiff has sufficiently pleaded violations of the overtime provisions of the FLSA and the NYLL.

Plaintiff further alleges that Defendants "knowingly and willfully operate their business with a policy of not providing a proper wage statement" to Plaintiff and other employees, (Compl. ¶ 29), as required by New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. L. § 195.[5] The WTPA "obligates an employer to furnish each employee with a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Franco v. Jubilee First Ave. Corp.*, No. 14-cv-7729, 2016 WL 4487788, at *14 (S.D.N.Y. Aug. 25, 2016) (citation omitted).

---

[5] Plaintiff's failure to cite specifically to the WTPA in the Complaint does not preclude a finding that Defendants violated the WTPA. Plaintiff asserted facts sufficient to put Defendants on notice of the WTPA claim, and the WTPA "is not an entirely distinct statute but rather an amendment to the NYLL." *Inclan v. N. Y. Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 500–01 (S.D.N.Y. 2015). Moreover, it is well-settled that "[t]he failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of a claim." *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir. 1988) (en banc).

Plaintiff's unrefuted assertion that Defendants did not provide him with wage statements suffices to establish that Defendants violated the WTPA.[6]

Finally, Plaintiff asserts that Defendants "had a practice and policy of violating the law by not maintaining Workers' Compensation insurance coverage." (Compl. ¶ 16.) Employers in the state of New York are required to maintain workers' compensation insurance coverage not by any provision of the FLSA or the NYLL, but by Section 50 of the New York Workers' Compensation Law ("NYWCL"). The NYWCL further provides that employers who fail to provide workers' compensation benefits to their employees are civilly and criminally liable. *See* N.Y. Workers Compensation Law § 52. To the extent Plaintiff seeks to recover a penalty for Defendants' failure to comply with the NYWCL, Section 52 of the NYWCL does not provide for the award of any penalty to the aggrieved party. Rather, any statutory fines imposed pursuant to that section are to be paid to the uninsured employers' fund or the state comptroller. *See id.* § 50(2). While Defendants' failure to procure insurance coverage could conceivably give rise to a negligence claim, provided that Defendants' failure was the proximate cause of injuries suffered by Plaintiff, the Complaint does not allege such a claim. Accordingly, Plaintiff is not entitled to damages arising from Defendants' alleged failure to comply with § 50 of the NYWCL.

b. *Unpaid Wages*

The FLSA requires employers to pay their employees the statutory minimum wage. 29 U.S.C. § 206(a). The NYLL expressly provides that employees are entitled to recover all unpaid wages, not just the statutory minimum wage for hours worked. *See* N.Y. Lab. Law § 198(3);

---

[6] Plaintiff pleads violations of the WTPA's notice requirements, rather than its record-keeping requirements. Accordingly, with respect to Defendants' failure to provide proper wage notices, Plaintiff does not plead a violation of the FLSA, which requires that covered employers "make, keep and preserve ... records" of their employees with respect to "wages, hours, and other conditions and practices of employment" for a certain period of time, (29 U.S.C. § 211(c)), but does not contain a notice requirement analogous to that of the WTPA.

*Santillan v. Henao*, 822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011); *Chun Jie Yin*, No. 07-CV-1236, 2008 WL 906736, at *6 (E.D.N.Y. Apr. 1, 2008); *Jowers v. DME Interactive Holdings, Inc.*, No. 00-CV-4753, 2006 WL 1408671, at *9 (S.D.N.Y. May 22, 2006).

Plaintiff claims that Defendants refused to pay him any wages for his final week of employment. (Compl. ¶ 40.) Based on Plaintiff's assertion and Defendants' default, Defendants are liable to Plaintiff for his unpaid wages under both the FLSA, which requires payment of minimum wages, and the NYLL, which requires payment of all unpaid wages.

### c. Assault and Battery

Under New York law, an assault is "an intentional placing of another person in fear of imminent harmful or offensive contact." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). A battery is "an intentional wrongful physical contact with another person without consent." *Id.* The terms assault and battery do not in any way depend "on the degree of violence" because the law "totally prohibits the first and lowest stage, since every individual's person is sacred and no other has the right to touch it." *Id.* (citations omitted).

Plaintiff alleges in the Complaint that on July 21, 2014, Defendant Todd struck and kicked Plaintiff until he was unconscious. (Compl. ¶ 8.) While the Complaint is light on the details surrounding this event, Plaintiff has identified his assailant, the date of the attack, and the manner of the attack. *See Thompson v. Booth*, No. 16-CV-3477, 2018 WL 4760663, at *5 (S.D.N.Y. Sept. 28, 2018) (finding complaint legally sufficient to state a plausible excessive force[7] claim where it detailed when Plaintiff was attacked, by whom, the manner in which he was attacked, and the injuries he suffered as a result of the alleged attack) (collecting cases).

---

[7] Excessive force claims under 42 U.S.C. § 1983 ("Section 1983") are "substantially identical" to state law assault and battery claims, with the exception that Section 1983 has the additional requirement that the act must "be committed under color of state law." *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991).

Accordingly, these facts, which are deemed admitted by Defendants pursuant to their default, are sufficient to support a finding the Defendant Todd is liable to Plaintiff for damages arising from assault and battery.

   d. *Attorneys' Fees*

The FLSA provides that courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 208 (2d Cir. 2009) (citing 29 U.S.C. § 216(b)). The NYLL also provides for attorney's fees to successful plaintiffs, adding that "the total amount of judgment shall automatically increase by fifteen percent" when a defendant fails to timely pay any amount of the judgment rendered against it. *See* N.Y. Lab. L. § 663(4). Plaintiff is entitled to reasonable attorney's fees and costs.

   e. *Declaratory and Injunctive Relief*

As to Plaintiff's request for injunctive relief, only the Secretary of Labor can seek an injunction for violations of the FLSA. *See New York State Court Clerks Ass'n v. Unified Court System of the State of New York*, 25 F. Supp. 3d 459, 466, 468 (S.D.N.Y. 2014) (citing cases). Moreover, Plaintiff no longer works for Defendants, and Defendants have never moved to certify a class of plaintiffs that includes current employees of Defendants. Thus, Plaintiff has no standing to request injunctive relief in this action, and his relief is limited to damages. *See Kassman v. KPMG LLP*, No. 11-CV-3743, 2013 WL 452913, at *9 (S.D.N.Y. Feb. 7, 2013) (holding that "a plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future"); *see also Oakley v. Nev. Dep't of Human Res.*, 09-CV-9175, 2012 WL 335657, at *15 (S.D.N.Y. Feb. 1, 2012) ("Former employees lack standing to obtain injunctive relief because they are no

longer affected by the challenged policies, and an injunction would do nothing to remedy their past injuries."); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 205 (S.D.N.Y. 2006) (plaintiff and potential class members had no standing to request injunctive relief where they no longer worked for defendants). For the same reasons, Plaintiff lacks standing to seek declaratory relief against Defendants. *See Kassman*, 2013 WL 452913, at *9.

   f. *Damages*

Given that Plaintiff has established Defendants' liability as to each of his claims, except any that arise from Defendants' failure to procure workers' compensation insurance, the only remaining question is the amount of damages to which Plaintiff is entitled. Plaintiff has not submitted to the Court evidence establishing the amount of damages with reasonable certainty. A district court is empowered under Rule 55(b)(2) of the Federal Rules of Civil Procedure, in the exercise of its discretion, to "'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (citing Fed. R. Civ. P. 55(b)(2)(B)–(C)); *see Enron*, 10 F.2d at 96 ("If in order to enter a default judgment the amount of damages must be ascertained, the court may conduct a hearing or order a reference.") (citation omitted). Accordingly, the Court refers the case to Judge Smith for an inquest into all damages attributable to Defendants' violations of the overtime provisions of the NYLL and FLSA, Defendants' violations of the wage notice provisions of the WTPA, Defendants' failure to pay Plaintiff for his final week of work, and Defendant Todd's assault and battery of Plaintiff, and into the amount of attorneys' fees and costs due to Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff's application for entry of a default judgment against Defendants Northern Tree Service and Todd Pezzementi is GRANTED as to liability for his claims sounding in violation of the overtime provisions of the NYLL and the FLSA, violation of the wage notice provisions of the WTPA, unpaid wages, and assault and battery, and the case shall be referred to Judge Smith for an inquest into damages on those claims, including any liquidated or statutory damages that Plaintiff may be entitled to, as well as the amount of reasonable attorneys' fees due to Plaintiff under the FLSA and the NYLL. Defendants' application to set aside their default is DENIED.

The Court will separately issue an amended order of reference in accordance with this Opinion and Order.

Dated: January 10, 2020
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge